**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | |
|---|---|
| VALLEY DRUGS, INC., individually, and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. 3:24-CV-366-DMB-RP<br>)<br>) |
| vs. | ) **CLASS ACTION COMPLAINT**<br>) |
| UNITEDHEALTH GROUP INCORPORATED, OPTUM, INC., OPTUMRX, INC., AND OPTUMRX HOLDINGS, LLC, | )<br>) Jury Trial Demanded<br>)<br>)<br>) |
| Defendants. | ) |

Plaintiff Valley Drugs, Inc. ("Plaintiff" or "Valley Drugs") brings this Class Action Complaint against Defendants UnitedHealth Group Incorporated ("United"), Optum, Inc., OptumRx, Inc., and OptumRx Holdings, LLC (collectively, "Optum," and with United, the "Defendants") based upon its personal knowledge, investigation by counsel, and review of public documents and states as follows:

**INTRODUCTION**

1. Plaintiff Valley Drugs brings this action for Defendants' violation of Mississippi statutory law concerning the reimbursement of prescription drug claims. Contrary to the law, Optum reimbursed pharmacies not affiliated with Optum at a rate between 19% and 145% less than those pharmacies affiliated with Optum.

2. Evidence of Optum's conduct came to light on October 14, 2024, when the Mississippi Board of Pharmacy released a report concerning its audit of Optum's 2022 claims. In that report, the Board found that, on the whole, "chain drug stores were paid 19% less than

affiliate pharmacies, while independent pharmacies were paid 145% less than affiliate pharmacies during the audit period. "Mississippi Board of Pharmacy Completes Audit of Optum for 2022 Claims," Mississippi Board of Pharmacy, Oct. 14, 2024 (hereinafter, "Board Report").[1]

3. Optum's favoring of its affiliates is in clear violation of Mississippi's Pharmacy Benefit Prompt Pay Act, which explicitly states that "a pharmacy benefit manager shall not reimburse a pharmacy or pharmacist in the state an amount less than the amount that the pharmacy benefit manager reimburses a pharmacy benefit manager affiliate for providing the same pharmacist services." Miss. Code Ann. § 73-21-156 (5)(a).

4. Given this conduct, Plaintiff Valley Drugs, on behalf of itself and the members of a class (the "Class Members," defined *infra*), seeks to hold Defendants responsible for the illegally lowered reimbursements they were paid by Optum. Given that the Board Report was the first of its kind, it is likely that Optum's wrongful conduct has been taking place for years, both before and after 2022. Plaintiff and Class Members are entitled to recoup their losses and seek an injunction against further illegal pricing activity by Optum.

## PARTIES

5. Plaintiff Valley Drugs, Inc. is a citizen of Mississippi. Its principal place of business is located at 327-B South Main St., Water Valley, MS 38965.

6. Defendant UnitedHealth Group ("United") is a corporate citizen of Minnesota. It is a corporation with a principal place of business located at 9900 Bren Road East, Minnetonka, MN 55353.

7. Defendant Optum, Inc. ("Optum") is a corporate citizen of Minnesota. It is a corporation with a principal place of business located at 11000 Optum Circle, Eden Prairie, MN

---

[1] *Available at* https://www.mbp.ms.gov/news/mississippi-board-pharmacy-completes-audit-optum-2022-claims.

55344. Optum is a wholly owned subsidiary of United.

8. Defendant OptumRx, Inc., ("OptumRx") is a California corporation with its principal place of business at 11000 Optum Circle, Eden Prairie, MN 55344. OptumRx is a wholly owned indirect subsidiary of United.

9. Defendant OptumRx Holdings, LLC ("OptumRx Holdings") is a Delaware corporation with its principal place of business located at 11000 Optum Circle, Eden Prairie, MN 55344. OptumRx Holdings is a wholly owned subsidiary of United and the direct parent company of OptumRx.[2]

## JURISDICTION AND VENUE

10. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendants.

11. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

12. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims took place within this District and Defendants conduct business in this Judicial District.

## FACTUAL ALLEGATIONS

13. Among the newest and most far-reaching entities in the American health-care system, Pharmacy Benefit Managers ("PBMs") have come to play an inextricable role in how

---

[2] Given the vagaries of United's corporate chart, Plaintiff brings this action against all three Optum entities, which, upon information and belief, serve as United's provider of pharmacy benefits management services in some combination.

3

Americans buy their medication.

14. PBMs, like Optum, administer pharmacy benefit management services on behalf of their clients, which include employers, health insurers, labor unions, employer coalitions, and government entities. They provide services such as developing drug formularies, creating and managing networks of pharmacies, processing prescription drug claims, reporting drug expenditures, creating and administering clinical programs, and negotiating with pharmaceutical manufacturers for rebates on behalf of their clients.

15. Over time, as PBMs consolidated and became vertically integrated within large conglomerates providing services across the health care system, PBMs came to exert enormous influence over drug pricing and purchasing decisions. PBMs like Optum contract with drug manufacturers, health plan sponsors, and pharmacies, serving as a middle-man in determining the ultimate price that a consumer has to pay.

16. This chart, part of the FTC's filing against the three largest PBMs, including Optum, alleging anticompetitive conduct concerning the price of insulin,[3] shows how the PBMs insert themselves into the purchase of a drug:



*Figure 1: Drug Purchase and Payment Chart*

---

[3] *In re Caremark Rx, LLC et al.*, Dkt. No. 9437, Federal Trade Commission (Complaint, Sept. 20, 2024).

17. Pharmacies such as Plaintiff and the Class Members find themselves at the mercy of the PBM, which reimburses them for services at a rate ultimately determined by the PBM. These rates are collected in Maximum Allowable Cost ("MAC") lists, which set the highest price that the PBM will reimburse a pharmacy for the medications on the list. According to the Board Report, Optum has multiple MAC lists, some concerning independent pharmacies, some for chain pharmacies, and presumably some for affiliated pharmacies.

18. The reimbursements contained on these MAC lists are considered to be proprietary information by Optum and are closely guarded secrets. It is virtually impossible for any given pharmacy to know how any particular reimbursement it receives compares to a reimbursement received by a different pharmacy.

19. Optum's conduct would not have been discovered but for Mississippi law, which requires an independent audit of PBM reimbursements pursuant to the Mississippi Pharmacy Benefits Prompt Pay Act, Miss. Code Ann. §§ 73-21-151—163 and the Pharmacy Benefit Audit Integrity Act, Miss. Code Ann. §§ 73-21-175—191.

20. On October 14, 2024, the Mississippi Board of Pharmacy put out a two-page report detailing its audit of Optum commercial prescription drug claims for the calendar year 2022. The audit revealed that Optum employs 49 distinct MAC lists, with 22 exclusive to pricing claims submitted at chain pharmacies and 15 solely for independent pharmacies. The Board Report provided startling detail into Optum's wrongful conduct:

- An analysis of 992 different GPI-12 codes between the exclusive lists revealed that independent pharmacies were reimbursed MAC rates that were 74% less than the average MAC reimbursement rate for chain pharmacies.[4]

---

[4] A GPI-12 code is a 12-digit Generic Product Identifier used as a method to specify drug

5

- 99.7% of generic drugs were reimbursed at MAC at independent pharmacies compared to only 88% at chain pharmacies, and 77.7% at affiliate pharmacies, reflecting that "chains were reimbursed via a transparent AWP [Average Wholesale Price] formula almost six times more than independent pharmacies," and "affiliates experienced a transparent AWP formula over ten times more than independent pharmacies."

- Patients had to pay the entire cost of the drug 81.9% of the time at independent pharmacies versus only 63.4% of the time at chain pharmacies, and only 46.1% of the time at affiliated pharmacies. This is a powerful driver pushing patients to make their drug purchases at affiliated pharmacies, as their out-of-pocket cost will be lower more often.

- Most damningly, for generic drugs, independent pharmacies were paid 145% less than Optum affiliate pharmacies during the audit period, and chain drug stores were paid 19% less.[5]

21. The Mississippi Pharmacy Benefits Prompt Pay Act requires that PBMs reimburse all pharmacies equally for their services, regardless of whether that pharmacy is affiliated with the PBM or not. The Mississippi Board of Pharmacy audit found that Optum was flagrantly violating this requirement, keeping reimbursements high for its affiliates and reimbursing them more often. This, in turn, would drive more customers to affiliated pharmacies and keep those pharmacies' revenues healthier. On the other side of the coin, non-affiliated pharmacies were reimbursed much less for the same services and forced to require their customers to pay for their entire drug purchase

---

formulations, including its active ingredient, dosage form, and strength.
[5] The Board Report provides examples for generic Azithromycin 250 mg #6 (Z-Pak) and generic Omeprazole (Prilosec), but more drugs would have been included in the audit.

more often, leading to lower revenues, sales, and potentially the loss of their customers and even their solvency.

22. Plaintiff Valley Drugs is an independent pharmacy, a small business operating in Mississippi. It has been reimbursed by Optum for sales of generic Azithromycin 250 mg #6, Omeprazole, and other drugs. Because it was not and is not an Optum affiliated pharmacy, upon information and belief Valley Drugs was reimbursed at rates identical (or similar) to the independent pharmacies cited in the Board Report.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of Plaintiff and the following "Class:"

> All pharmacies within the State of Mississippi who were reimbursed by Optum for providing "pharmacist services" (as defined by Miss. Code Ann. § 73-21-153) and were reimbursed by Optum for an amount less than Optum reimbursed its "pharmacy benefit manager affiliate[s]" (as defined by Miss. Code Ann. § 73-21-153).

24. Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendants has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

25. This action has been brought and may properly be maintained as a class action under Fed. R. Civ. P. 23 because there is a well-defined community of interest in the litigation and membership of the proposed Class is readily ascertainable.

26. **Numerosity**: A class action is the only available method for the fair and efficient

adjudication of this controversy. The members of the Class are so numerous that joinder of all members is impractical, if not impossible. Plaintiff is informed and believes and, on that basis, alleges that the total number of Class Members is in the hundreds. Membership in the Class will be determined by analysis of Defendants' records.

27. **Commonality**: Plaintiff and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

   i. Whether Defendants violated the prohibition against reimbursing non-affiliates at a lower rate than its affiliates encoded in Miss. Code Ann. § 73-21-156 (5);

   ii. Whether Defendants engaged in unfair, unlawful or deceptive practices;

   iii. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendants' wrongful conduct;

   iv. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct.

28. **Typicality**: Plaintiff's claims are typical of the claims of the Plaintiff Class. Plaintiff and all members of the Plaintiff Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

29. **Adequacy of Representation**: Plaintiff in this class action is an adequate representative of each of the Plaintiff Class in that Plaintiff have the same interest in the litigation of this case as the Class Members, are committed to the vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Class in their entirety. Plaintiff anticipates no management difficulties in this

litigation.

30. **Superiority**: The damages suffered by individual Class Members are significant but may be small relative to each member's enormous expense of individual litigation. This makes or may make it impractical for members of the Plaintiff Class to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately. Individualized litigation increases the delay and expense to all parties and to the court system, presented by the case's complex legal and factual issues. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

31. Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, so it is impracticable to bring all Class Members before the Court.

32. This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate concerning the Class in their entireties. Defendants' policies and practices challenged herein apply to and affect Class Members uniformly. Plaintiff's challenge of these policies and procedures hinges on Defendants' conduct concerning the Class in

their entirety, not on facts or law applicable only to Plaintiff.

33. Unless a Class-wide injunction is issued, Defendants may continue to act unlawfully, as set forth in this Complaint.

34. Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Fed. R. Civ. P. 23(b)(2).

## CLAIM FOR RELIEF

### COUNT I
### Violation of the Mississippi Pharmacy Benefits Prompt Pay Act
### Miss. Code Ann. § 73-21-156 (5)

35. Plaintiff realleges the allegations above as if fully set forth herein.

36. At all times herein relevant, Defendants violated the Mississippi Pharmacy Benefits Prompt Pay Act, Miss. Code Ann. § 73-21-156 (5), requiring them to "not reimburse a pharmacy or pharmacist in the state an amount less than the amount that the pharmacy benefit manager reimburses a pharmacy benefit manager affiliate for providing the same pharmacist services."

37. Defendants reimbursed their affiliated pharmacies at rates much higher than they reimbursed non-affiliated pharmacies.

38. By doing so, in contravention of the law, Defendants caused Plaintiff and Class Members injury in an amount to be determined at trial, including but not limited to economic damages in the form of lower revenue and loss of business.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, and each member of the proposed Class respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendants as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action

and certify each of the proposed Class and/or any other appropriate Class under Fed. R. Civ. P. 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

2. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3. That the Court enjoin Defendants, ordering them to cease and desist from similar unlawful activities in violation of the Mississippi Pharmacy Benefits Prompt Pay Act;

4. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein;

5. For injunctive relief requested by Plaintiff, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

6. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7. For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

8. For all other Orders, findings and determinations identified and sought in this Complaint.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: November 26, 2024.                    Respectfully submitted,

/s/ *Don Barrett*
John W. ("Don") Barrett (MSB #2063)
Katherine Barrett Riley (MSB #99109)
Sterling Aldridge (MSB #104277)
**BARRETT LAW GROUP, P.A.**
404 Court Square N
P.O. Box 927
Lexington, MS 39095

Tel: (662) 834-2488
dbarrett@barrettlawgroup.com
KBRiley@barrettlawgroup.com
saldridge@barrettlawgroup.com

Charles J. LaDuca (to be admitted *pro hac vice*)
Christian Hudson (to be admitted *pro hac vice*)
**CUNEO GILBERT & LADUCA, LLP**
2445 M Street NW
Suite 740
Washington, DC 20037
Tel: (202) 789-3960
charlesl@cuneolaw.com
christian@cuneolaw.com

*Attorneys for Plaintiff*